**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICIA A. SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | )  2:18-cv-00600 |
| v. | ) |
| | ) |
| CITIZENS BANK, | ) |
| | ) |
| Defendant. | ) |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Defendant Citizens Bank's Renewed Motion to Dismiss (ECF No. 23) filed in response to Plaintiff Patricia Scott's Amended Complaint. (ECF No. 22.) Ms. Scott timely filed her Amended Complaint following this Court's issuance of an Order and Opinion (ECF Nos. 20 and 21), dismissing Ms. Scott's original complaint seeking prospective injunctive relief without prejudice and with leave to amend. *See Scott v. Citizen Bank*, No. 18-600, 2020 WL 2744105, at *1 (W.D. Pa. May 27, 2020). Ms. Scott, representing herself *pro se*, filed the present Amended Complaint in an attempt to cure her first complaint's deficiencies in alleging standing, a necessary threshold to claiming prospective injunctive relief under Title III of the American with Disabilities Act (ADA). Citizens Bank argues that Ms. Scott's amendments still fail to sufficiently allege standing to seek prospective injunctive relief. The Court agrees. For the forgoing reasons, Citizens Bank's Renewed Motion to Dismiss (ECF No. 23) is **GRANTED**.

**I.  BACKGROUND**

Many, if not most, of the allegations in Ms. Scott's Amended Complaint (ECF No. 22) mirror those in her initial complaint. (ECF No. 6.) Ms. Scott, who requires the use of a wheelchair

for mobility, resides in Heidelberg, Pennsylvania—a small borough about seven (7) miles southwest of Pittsburgh, Pennsylvania. (ECF No. 22, at 7.) On March 16, 2018, Ms. Scott alleges that she entered a Citizens Bank branch located at 525 William Penn Place in downtown Pittsburgh intending to cash a check. (*Id.*, at 1 ¶ 1.) Ms. Scott states that she waited in line for a bank teller to assist her. (*Id.*) According to Ms. Scott's Amended Complaint, the bank teller "intentional[ly] skipped over her"—allowing "the walking customers to go in front of her to make their banking transactions." (*Id.*)

Eventually, Ms. Scott states, the bank teller approached her. (*Id.*, at 2 ¶ 1) When the teller walked over, Ms. Scott alleges that she presented the teller with her debit card and a refund check and then "requested funds." (*Id.*) The bank teller momentarily left, and Ms. Scott alleges that the bank teller returned without the funds she requested. (*Id.*) At that time, Ms. Scott states that the bank teller was "extremely hostile"; "unsympathetic toward the limitations of her physical disability"; and requested that Ms. Scott "use the debit card machine to slide her card like all the other customers." (*Id.*) Following this interaction, Ms. Scott asked to speak with the branch manager. (*Id.*) Shortly thereafter, the manager approached Ms. Scott's wheelchair with "her check and her debit card in his hand," and Ms. Scott requested that he "assist her with cashing her check." (*Id.* ¶ 2.) The manager, like the earlier bank teller, allegedly told Ms. Scott "to slide her debit card like all the other customers" (*Id.* ¶ 3) and "refused to cash [Ms. Scott's] check." (*Id.*, at 3 ¶ 1.)

Ms. Scott alleges that she was "unable to reach the high debit card machine from her mobile chair" because the machine is too high (*Id.*, at 5 ¶ 3), and she was thus unable to "cash her check[.]" (*Id.*, at 2 ¶ 2, 4 ¶ 1.) Based on her alleged interaction with the bank staff and inability to use the ATM, Ms. Scott claims that she was "denied the right of full and equal enjoyment of the goods [and] services . . . of a place of public accommodation" and that the prejudicial treatment is

"because she[ is] confined to a wheelchair." (*Id.*, at 3 ¶¶ 2–3, at 5 ¶ 2.) Moreover, Ms. Scott claims that Citizens Bank treated "non-disabled customers with special privileges by deliberately skipping over a wheelchair customer." (*Id.*, at 4 ¶ 2.) Finally, Ms. Scott claims that as a result of Citizens Bank's actions, she "kept her distance from the downtown [Citizens Bank] location," (*Id.*, at 5 ¶ 1), and she also alleges having to travel "seven (7) miles [s]outhwest of Pittsburgh, Pennsylvania because the Citizen[s] Bank in Carnegie[,] Pennsylvania isn't equipt [sic] with an automatic push button door opener." (*Id.*, at 7 ¶ 2.)

These actions by Citizens Bank, Ms. Scott argues, violated Title III of the ADA. (*Id.*, at 3 ¶ 3, 6 ¶ 1.) To remedy this alleged harm, the Court reads Ms. Scott's Amended Complaint to request prospective injunctive relief under Title III of the ADA based on her statements seeking "relief for an automatic push button door opener"; a "lower customer services counter top"; and "a lower debit card machine" across all branches. (*Id.*)

## II. LEGAL STANDARD

### A. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972). In practice, this liberal pleading standard works as "an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring). If the court can reasonably read the pleadings to state a valid claim on which the litigant could prevail, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364, 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969). During the initial stages of litigation,

a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83, 86 (3d Cir. 1997), *overruled on other grounds by Abdul-Akbar v. McKelvie*, 239 F.3d 307 (3d Cir. 2001). Because Ms. Scott is a *pro se* litigant, this Court will consider the pleadings in that vein.

### B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

In evaluating a challenge to subject matter jurisdiction under Rule 12(b)(1), a court first must determine whether the movant presents a facial or a factual attack. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). The distinction is important because it determines how the complaint must be reviewed here. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis*, 824 F.3d at 346 (citation omitted). A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (citation omitted). Here, Citizens Bank makes a facial challenge because it contends that the allegations of the Amended Complaint, even accepted as true, are insufficient to establish Article III standing as to Ms. Scott's Title III claim. (ECF No. 23.)

In considering a facial challenge to standing, courts are to apply the same standard as on review of a Rule 12(b)(6) motion for failure to state a claim. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006) (explaining "that the standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)" (citation omitted)). Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court's decision in *Ashcroft v. Iqbal* held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to survive a Rule 12(b)(6) motion. 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, under Rule 12(b)(6), the plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a plausible claim for relief. *Twombly*, 550 U.S. at 555.

Our Court of Appeals has broken the *Iqbal* and *Twombly* pleading standard into a three-part framework. First, the Court "identif[ies] the elements of the claim." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Second, the Court "review[s] the complaint to strike conclusory allegations." *Id.* Third, the Court "look[s] at the well-pleaded components of the complaint and evaluat[es] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* Along the same lines, the Third Circuit has held that the complaint must "show" that the plaintiff is entitled to relief based on the facts that the Court must presume as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

In light of Citizens Bank's facial attack on Ms. Scott's standing, the Court will review Ms. Scott's Amended Complaint and Citizens Bank's Rule 12(b)(1) jurisdictional challenge through the lens of a 12(b)(6) motion to dismiss for failure to state a claim.

## III.  DISCUSSION

Ms. Scott's Amended Complaint seeks only prospective injunctive relief under Title III of the ADA. (ECF No. 22.) The Court accepts Citizens Bank's argument in its Renewed Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) (ECF No. 23) that Ms. Scott failed to sufficiently plead standing to seek injunctive relief. Even applying a liberal *pro se* pleading standard, the Amended Complaint does not make out the required allegations of standing, and there is no basis to conclude that further amendment can cure these issues. Accordingly, the Court dismisses Ms. Scott's Amended Complaint seeking prospective injunctive relief for want of jurisdiction.

Ms. Scott's Amended Complaint seeks prospective injunctive relief to require Citizens Bank to lower the height and accessibility of ATM machines and to implement automatic push doors at the downtown Pittsburgh Citizens Bank branch and in Citizens Banks across Pennsylvania. (ECF No. 22, at 6 ¶ 2.) Ms. Scott's Complaint is met with Citizens Bank's Motion to Dismiss, which reasserts its argument that Ms. Scott's Amended Complaint fails to plead facts sufficient to establish standing, namely, the necessary injury in fact under Title III of the ADA. (ECF No. 24, at 1.)

Every case that comes before an Article III court must present a live case or controversy. *See* U.S. Const. art. III, § 2. To implement the Constitution's case or controversy requirement, federal courts employ the doctrine of standing, which essentially asks whether "this plaintiff can assert these claims" consistent with the limited jurisdiction provided by Article III. *See, e.g.*, *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997) ("Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution."). While the standing doctrine has evolved over the

years, the operative Supreme Court precedent "holds that a litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). To ensure "proper adversarial presentation" of the case, the plaintiff bears the burden of demonstrating her standing. *See id.*

"Because the remedy for a private ADA Title III violation is [prospective] injunctive relief, courts look beyond the alleged past violation and consider the possibility of future violations." *Anderson*, 943 F. Supp. 2d at 538. A plaintiff, therefore, must demonstrate a real and immediate threat of future injury in order to satisfy the standing doctrine's "injury in fact" requirement. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103–04 (1983). Simply alleging "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 495–96 (1974).

When the Court evaluates whether a plaintiff's Title III ADA claim against a public accommodation alleges an "injury in fact," it appropriately considers four (4) factors—not all of which must be present in every case, and none of which is alone dispositive. *See Anderson*, 943 F. Supp. 2d at 539 (citing *Harty v. Burlington Coat Factory of Pa., L.L.C.*, No. 11-01923, 2011 WL 2415169, at *4 (E.D. Pa. June 16, 2011)). First, the Court should consider the plaintiff's proximity to the defendant's place of public accommodation. *Id.* Second, the plaintiff's past patronage of the public accommodation. *Id.* Third, the definitiveness of the plaintiff's plan to return. *Id.* And, finally, the plaintiff's frequency of nearby travel. *Id.*

As Citizens Bank's Renewed Motion to Dismiss highlights, the Court's prior Memorandum Opinion dismissing Ms. Scott's ADA claims outlined with specificity exactly what Ms. Scott would have to plead to demonstrate standing for prospective injunctive relief under Title III of the ADA. *See Scott v. Citizen Bank*, No. 18-600, 2020 WL 2744105, at *4, *6 (W.D. Pa. May 27, 2020) ("If [Ms. Scott chooses to file an Amended Complaint], she should address the four (4) factors outlined by this Court in *Anderson v. Macy's Inc.*, 943 F. Supp. 2d 531 (W.D. Pa. 2013)."). Her Amended Complaint, however, fails to follow the roadmap the Court provided. Instead, Ms. Scott's Amended Complaint reiterates the same facts alleged in her original complaint, adding only two factual allegations: (1) that Citizens Bank's conduct caused her to keep her distance from the downtown Pittsburgh location, and (2) that because the Citizens Bank in Carnegie, Pennsylvania is not equipped with "an automatic push button door opener," she has to travel seven (7) miles Southwest of Pittsburgh, presumably to visit another bank. (ECF No. 22, at 5, ¶ 1, 7 ¶ 2.) In the Court's assessment, these additional allegations are not nearly enough to make out standing applying the four (4) factor test outlined in *Anderson*. The Court will address those two (2) additional factual allegations in turn.

Regarding Ms. Scott's first additional allegation, the Court concludes that, even liberally construing the Amended Complaint, a statement of definitive intent to return under the third standing factor outlined in *Anderson* cannot plausibly be inferred from Ms. Scott's broad statement that she "kept her distance." (*Id.*, at 5 ¶ 1.) In its first Opinion dismissing her original complaint, the Court placed Ms. Scott on direct notice of the importance of demonstrating a definitive intent to return to the Citizens Bank downtown Pittsburgh location. *See Scott*, 2020 WL 2744105, at *4 (discussing the importance of standing factor three (3) in the Court's decision in *Anderson*). The

best that can be said is that she has not returned to the downtown Pittsburgh location, not that she ever intended to.

As for Ms. Scott's second additional allegation, Citizens Bank argues that Ms. Scott's statement does not aid her case. (ECF No. 24, at 2.) Specifically, Citizens Bank relies on the Court's analysis of standing factor one (1) in *Anderson*, which looks to the plaintiff's proximity to the defendant's place of public accommodation. (*Id*.) In *Anderson*, the Court concluded it was "highly unlikely" that the plaintiff would return to a Macy's store twenty (20) miles away when there were alternative Macy's stores closer to the plaintiff's residence. *See Anderson*, 943 F. Supp. 2d at 539. Citizens Bank argues that Ms. Scott's additional allegation in her Amended Complaint "appears to address the point that there are other Citizens locations closer to her residence by explaining that the Citizens in Carnegie, Pennsylvania is allegedly not equipped with an automatic push button door opener," (ECF No. 23, at 2 ¶ 2) and thus, the Court should consider the possibility of Ms. Scott returning to the Citizens Bank in downtown Pittsburgh similarly unlikely.[1] The Court, however, concludes that Ms. Scott's allegation is distinguishable from the facts asserted in *Anderson*. In *Anderson*, the Court did indeed conclude that it was highly unlikely that the plaintiff would return to a Macy's store approximately twenty (20) miles away; however, the Court made this conclusion on the basis that there were other stores closer to the plaintiff: one five (5) miles away and another sixteen (16) miles away. *See Anderson*, 943 F. Supp. 2d at 539. In the present case, the downtown Pittsburgh Citizens Bank is located approximately seven (7) miles from Ms. Scott's residence. (ECF No. 22, at 7.) The seven (7) mile distance is less than the sixteen (16) miles the Court in *Anderson* deemed close enough, and it is only two (2) miles farther than the five (5)

---

[1] Ms. Scott's Reply (ECF No. 25) to Citizens Bank's Renewed Motion to Dismiss mirrors the facts alleged in her Amended Complaint.

mile distance the Court also deemed close enough in *Anderson* to find proximity under factor one (1). 943 F. Supp. 2d at 539. Like the Court in *Anderson*, the Court here interprets Ms. Scott's second statement to sufficiently plead proximity under factor one (1).

In *Anderson,* the Court stated that it may presume an inference of frequently traveling in the locality, *i.e.*, *Anderson* factor four (4), where the plaintiff was located under five (5) miles away from the Macy's store. *Id.* The Court in *Anderson* based its presumption of frequency of nearby travel on the plaintiff's *pro se* status and the minimal distance. *Id.* at 541. In Ms. Scott's case, the Court concludes that five (5) and 7.6 miles are close enough in distance for the same inference of frequent nearby travel to the downtown Pittsburgh Citizens Bank under *Anderson* factor four (4) to exist here. Thus, based on *Anderson* and considering Ms. Scott's *pro se* status, the second additional allegation in the Amended Complaint is sufficient at this stage to indicate a frequency of nearby travel under *Anderson* factor four (4).

Notwithstanding the Court's conclusion that Ms. Scott's second additional allegation mildly bolsters her attempt to demonstrate standing under factor one (1) and factor four (4), the Court still concludes that the Amended Complaint nonetheless fails to plausibly allege standing for prospective injunctive relief. Ms. Scott's Amended Complaint remains devoid of sufficient allegations demonstrating past patronage of the involved facility under factor two (2)[2] and lacks support for a definitive intent to return under factor three (3), a factor which this Court previously identified to be of "great importance." *Anderson*, 943 F. Supp. 2d at 540. Based on these

---

[2] From the face of Ms. Scott's Amended Complaint, it is not evident that she visited the Citizens Bank location at issue more than once (her only visit being March 16, 2018). (ECF No. 22, at 1.) Visiting a public accommodation only once is not enough to establish standing under *Anderson* factor two (2). *Anderson*, 943 F. Supp. 2d at 540 (quoting *Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1164 (C.D. Cal. 2005)) ("When a plaintiff visits a public accommodation 'only once, the lack of a history of past patronage seems to negate the possibility of future injury at [that] particular location.'").

deficiencies, the Court is unable to decipher a plausible immediate or imminent injury in fact, which is a cornerstone of pleading a claim for prospective injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103–04 (1983); *O'Shea v. Littleton,* 414 U.S. 488, 495–96 (1974). Notably, the Court provided Ms. Scott with the tools necessary to allege standing in its previously issued Opinion, and Ms. Scott's Amended Complaint did not heed the Court's guidance. *See Scott v. Citizen Bank*, No. 18-600, 2020 WL 2744105, at *4, *6 (W.D. Pa. May 27, 2020). Nonetheless, the Court concludes that Ms. Scott's Amended Complaint has not alleged facts sufficient to plausibly demonstrate standing for prospective injunctive relief under Title III, and the Court will grant Citizens Bank's Renewed Motion to Dismiss under 12(b)(1).[3]

Citizens Bank requests that the Court dismiss Ms. Scott's Amended Complaint with prejudice. (ECF No. 23.) The Court concludes that dismissal is appropriate, but because it is for lack of subject matter jurisdiction, it is without prejudice. *See In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155-56 (3d Cir. 1997) (holding that a dismissal for lack of subject matter jurisdiction is "without prejudice"). In its previous Opinion, the Court clearly stated that an Amended Complaint would be Ms. Scott's "final opportunity" to plead facts sufficient to

---

[3] When a district court reviews a complaint filed by a plaintiff proceeding *in forma pauperis*, the court plays an important screening function under 28 U.S.C. § 1915(e) (2018). *See, e.g.*, *Anderson*, 943 F. Supp. 2d at 537. This Court has interpreted its screening function to reflect the standard of review under Federal Rule of Civil Procedure 12(b)(6). In its first Opinion (ECF No. 20) dismissing Ms. Scott's original complaint, the Court concluded that because Citizens Bank did not move to dismiss her complaint under F.R.C.P. 12(b)(6), the Court would refrain from fully examining whether Ms. Scott's original complaint had sufficiently stated a claim under Title III of the ADA. (*Id*., at 10 n.3.)

Likewise, in the present action, Citizens Bank's Renewed Motion to Dismiss does not move to dismiss Ms. Scott's Amended Complaint under F.R.C.P. 12(b)(6), so the Court need not endeavor to provide an in-depth analysis of whether Ms. Scott's Amended Complaint fails to state a claim at all. The Court instead refers to its previous analysis in its Opinion at ECF No. 20, which it undertook in addressing Citizens Bank's premature request that Ms. Scott's original complaint be dismissed with prejudice. *See Scott v. Citizens Bank*, 2020 WL 2744105, at *4 (explaining that "taking the allegations in [Ms. Scott's original complaint] as true, the Court cannot say that Ms. Scott has failed to plead a plausible ADA claim"). Whether Ms. Scott's Amended Complaint has pleaded a plausible ADA claim, however, is not the necessary inquiry here because the Amended Complaint does not facially demonstrate the threshold requirement of standing, the focus of this Opinion.

demonstrate standing for prospective injunctive relief under the ADA. *See Scott*, 2020 WL 2744105, at *5. As outlined above, Ms. Scott's Amended Complaint has not done so, and there is no basis to conclude that any further pleading efforts would be successful, so the Amended Complaint will be dismissed without leave to amend.

### IV. CONCLUSION

While courts have a duty to liberally construe *pro se* filings, the duty only extends so far. Here, Ms. Scott's Amended Complaint fails to adequately allege her standing to seek such relief, even after the Court provided her a clear roadmap for amendment, identifying the four (4) standing factors she would have to address. The Amended Complaint does not sufficiently allege standing. For these reasons, Citizens Bank's Renewed Motion to Dismiss Under Rule 12(b)(1) (ECF No. 23) is **GRANTED**, and Ms. Scott's Amended Complaint (ECF No. 22) is **DISMISSED WITHOUT PREJUDICE** for want of subject matter jurisdiction. No further leave to amend is granted.

   /s Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: October 28, 2020

cc: All counsel of record
     Patricia Scott, *pro se* (by U.S. Mail)